UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

Civil No. 6:16-cv-01302-RBD-TBS

Pirtek USA, LLC,

                Plaintiff,

vs.

Michael J. Twillman, Dolores M. Twillman,
and Donald J. Twillman,

                Defendants.
_____/

**PIRTEK USA'S REPLY MEMORANDUM IN SUPPORT
OF ITS MOTION FOR A PRELIMINARY INJUNCTION**

      The Twillmans do not deny that they established their own hydraulic hose business immediately after receiving confidential, proprietary information from Pirtek USA, Inc. ("Pirtek") detailing how to establish a hydraulic hose franchise. They do not deny that their business model, set-up, equipment, vans, and customizations are done in the exact image of the Pirtek business system. And they do not deny that they lied to Pirtek to get their $25,000 initial franchise fee back—stating that they wanted to "wait a few months…and then proceed again with their Pirtek Franchise," when in fact they were already planning their own competing hydraulic hose business. The Twillmans argue instead that, by returning the fee, Pirtek should now be deemed to have "accepted" the Twillmans' "rescission" of the Agreement. Not only is the Twillmans' defense inequitable, but it is also at odds with the plain language of the Franchise Agreement, which specifically provides that it "may not be waived, altered or rescinded, in whole or in part, except by a writing signed by you and us."

1

*See* Ferretti Decl., Ex. C (Franchise Agrmt. ¶16.B.) Pirtek never agreed in writing (or otherwise) to rescission.

The vague "union issues" referenced by the Twillmans do not warrant rescission of the Franchise Agreement. Although the Twillmans wanted a non-union business, this was never a condition precedent to a binding franchise agreement and was entirely within the control of the Twillmans, not Pirtek. What the "union issue" instead shows is that the Twillmans capitalized unfairly on Overland Pirtek's union problems to steal Pirtek's goodwill, i.e., its existing and potential customers. The Twillmans abandoned the Pirtek franchise—to avoid a royalty and marketing fees—and formed American Hydraulic Services, Inc. ("American Hydraulic") as a union shop to divert Pirtek business to their new company, hiring away two Pirtek Overland employees—who knew both the Pirtek business system and Pirtek's customer—in the process. The Court should not reward the Twillmans' deceptive and opportunistic business dealings, which is the very type of behavior prohibited by the noncompetition and confidentiality clauses.

## FACTUAL BACKGROUND

The Twillmans do not dispute the critical facts. They admit that:

- Michael Twillman signed the Franchise Agreement and they the Twillamans all signed the Personal Guaranty, binding them to the terms of the Franchise Agreement, including the noncompetition and confidentiality clauses (Ferretti Decl., ¶ 8, Ex. C);

- Pirtek provided them with an electronic copy of the Pirtek Start-Up Guide, the 2016 Pirtek pro forma and other information that Pirtek provides its new franchisees to help them start their hydraulic hose Pirtek franchises (Ferretti Decl., ¶ 8);

- On *the day after* the Twillmans received an electronic copy of the Start-Up Guide and pro forma, they informed Pirtek they were "cancelling the set up process."(Ferretti Decl., Ex. E);

- Dee Twillman, on a March 7 telephone call with Steve Morris, asked for the Twillmans' $25,000 initial fee back, stating that the Twillmans "had decided to wait on moving forward on their Pirtek franchise" and that they "wanted to wait for a few months for the union concerns to blow over and then proceed again with their Pirtek franchise." (Morris Decl., ¶ 19);

- The same day that the Twillmans filed dissolution papers for the corporate entity established to operate the franchised business, Michael Twillman filed Articles of Organization with the State of Missouri, forming American Hydraulic Services, LLC ("American Hydraulic") (Ferretti Decl., ¶¶ 19-20, Exs. E, F);

- American Hydraulic hired Pfaffenback and Wiele from the Overland Pirtek franchise in May, 2016 and these two provided the same Mobile Systems and Service Technician services for American Hydraulic that they had provided for Pirtek Overland using techniques and confidential customer information they had obtained during their Overland employment, all in violation of their own noncompete agreements. (Hastings Decl., ¶ 3; Penning Decl., Ex. A);

- American Hydraulic's vans were identical to Pirtek vans and were outfitted with the same equipment and customizations. (Hastings Decl., ¶¶ 3-5).

If the Twillmans truly believed that they needed to establish a union shop to "survive," their Pirtek franchise did not stand in their way. As Glenn Duncan testified: "[w]hether or not a Pirtek franchise chooses to employ union members is a decision left to each franchise on an individual basis." Duncan Decl., ¶ 6. So even if it is true, as Dee Twillman claimed, that "[w]e could not have acquired the necessary customer base for a Pirtek franchise as a non-union shop" (Dee Twillman Decl. ¶ 23), they could have made the Pirtek franchise a union shop, as they did with American Hydraulic.[1] In truth, the problems

---

[1] Other statements made by the Twillmans are simply unsupported. The Twillmans assert that they operated an "existing hose business" since 1996, (Defs' Resp., p. 2.), but later report, in Dee Twillman's declaration, that what this actually means is that they "bought a hose machine for Missouri Crane, Inc." and made some hoses, primarily, it appears, for themselves. (Dee Twillman Decl., ¶ 8.) Indeed, they admit they used Pirtek Overland "at least 40 times" for their hose replacement needs in their crane business. (*Id.* at ¶ 11.)

3

franchisee Pirtek Overland had with its union contract was not an "issue" that forced the Twillmans to cancel the franchise agreement. The Twillmans saw it as an opportunity to steal Pirtek's good will (i.e., existing and potential customers)[2] by forming its new business and avoid paying promised royalties and marketing fees to Pirtek.

## ARGUMENT

The Franchise Agreement between the Parties was not "rescinded," and the Twillmans cannot evade the noncompetition and confidentiality clauses to which they voluntarily agreed and they plainly have violated.

### I. THE FRANCHISE AGREEMENT WAS NOT RESCINDED AND THE CONFIDENTIALITY AND NONCOMPETITION CLAUSES ARE ENFORCEABLE AGAINST THE TWILLMANS.

#### A. A Party to a Contract Cannot Unilaterally Rescind It, as the Twillmans Claim to Have Done.

Contract rescission is a harsh result generally disfavored by courts. *E.g. Rood Co. v. Bd. of Pub. Instruction of Dade Cty.*, 102 So. 2d 139, 142 (Fla. 1958); *Steinberg v. Bay Terrace Aprtm. Hotel, Inc.*, 375 So. 2d 1089, 1092 (Fla. 3d DCA 1979). Contracts may not be unilaterally rescinded by one of the parties unless there are legally recognized grounds to do so. *Bland v. Freightliner LLC*, 206 F. Supp. 2d 1202, 1206 (M.D. Fla. 2002). These grounds include fraud, accident, or mistake in the procurement of the contract. *E.g. Essex Ins. Co. v. Zota*, 607 F. Supp. 2d 1340, 1351 (S.D. Fla. 2009), *aff'd* 408 Fed. Appx. 323 (11th Cir. 2011) (construing Florida rescission law).

---

[2] That Dee Twillman may know some people in the heavy equipment industry in Missouri does not mean that American Hydraulic is not soliciting customers of the Pirtek Overland franchise and other Pirtek customers. In fact, Dee Twillman's statements only confirm—if further confirmation were needed—that the Twillmans were violating the terms of the noncompete.

4

The Twillmans do not allege fraud, accident, or mistake, but instead claim that moving forward with a Pirtek franchise would not be economically beneficial due to emerging "union issues." (Dee Twillman Decl., ¶ 5.) But mere surprise or hardship is insufficient to support unilateral rescission of a contract. *E.g. Int'l Realty Asscs. v. McAdoo*, 99 So. 117, 119 (Fla. 1924).

B. **The Contract Terms Identified by the Twillmans Do Not Allow Unilateral Rescission.**

1. **Item 5 of the Franchise Disclosure Document**

The Twillmans' argument regarding Item 5 the Franchise Disclosure Document ("FDD") does not support rescission. (Defs' Joint Resp. at 9-10.) The Franchise Agreement cannot possibly have been rescinded, because by its very terms it "may not be waived, altered *or rescinded*, in whole or in part, *except by a writing signed by you and us*." See Ferretti Decl., Ex. C, (Franchise Agreement ¶16.B) (emphasis added).

Additionally, the clause in Item 5 of the FDD refers only to cancellation, not rescission, which are separate legal concepts. A rescission renders the contract abrogated and of no force or legal effect from the beginning. *United Auto Ins. Co. v. Salgado*, 22 So. 3d 594, 603 (Fla. 3d DCA 2009). In contrast, cancellation ends the contract as of the date the cancellation becomes effective – it does not operate retroactively, as rescission does. *Id. See also NMSBPCSLDHB v. Cty. of Fresno*, 152 Cal. App. 4th 954, 959 (2007) ("Rescission is a retroactive termination of a contract, as compared to cancellation, which is a prospective termination.") (internal quotations omitted); *ABC Outdoor Advert., Inc. v. Dolhun's Marine, Inc.*, 157 N.W.2d 680, 683 n.2 (Wis. 1968) (recognizing "[t]ermination' or 'cancellation' of conditional contract means to abrogate so much of its as remains unperformed…[as

5

distinguished from 'rescission.'") Cancellation of a contract is thus akin to prospective termination and, as even the Twillmans acknowledge, termination preserves the remedy of damages for breach. (Defs.' Resp., at 5) (citing *Generaux v. Dobyns*, 134 P.3d 983, 987 (Ore. 2006)). Accordingly, courts enforce contract clauses, including non-compete or non-solicit provisions, following cancellation. *E.g. Talk Fusion, Inc. v. Ulrich*, 2011 WL 2681677, at *6 (M.D. Fla. June 21, 2011).

The right to cancel does not allow the Twillmans to escape their obligations under the confidentiality and noncompetition clauses of the Franchise Agreement or the FDD. The Item 5 clause merely reflects the reality that Pirtek will not force an unwilling applicant to establish a Pirtek Franchise if the party gives sufficient early notice of their intent to withdraw. The Twillmans' obligations under the noncompetition and confidentiality clauses were not rescinded or abrogated, which, again, would have required the signed written agreement of both parties. (Franchise Agreement ¶16.B.)

### 2. Paragraph 7.B of the Franchise Agreement

The Twillmans also claim that Paragraph 7.B of the Franchise Agreement allowed them to essentially rescind the agreement (i.e., treat is as if it never existed by adjusting its "effective date"). The argument flies in the face of the Agreement's explicit "Effective Date" provision, ¶ 16.P., which states the effective date is "designate[d] [] on page one of this Agreement" — February 19, 2016. *See* Ferretti Decl., Ex. C (Franchise Agrmt. ¶ 16.P.). By its plain language, paragraph 7.B clause protects **Pirtek** from franchise applicants who, in the course of the training, demonstrate themselves to be incapable of running a successful franchise. The clause is a relief valve designed to end the franchise agreement if the

6

franchisee did not complete training to Pirtek's satisfaction. The clause presupposes that the franchisee made a good faith effort to completes the training program to Pirtek's satisfaction. It obviously does not give the franchisee a right to rescind the Agreement at any time before it completes training (even on the last day of the training program), as the Twillmans argue here.

Interpreting the Franchise Agreement as requested by the Twillmans would read out of the Agreement all of Pirtek and the Twillman's pre-training rights, most notably Pirtek's license to use Pirtek's trademarks and operate a Pirtek franchise "for a period of 10 years from the date of this <u>Agreement</u>" — not for a period commencing after the completion of training. *See* Ferretti Decl., Ex. C, at 4 (emphasis added). It is a fundamental principle of contract interpretation that contracts must be given a reasonable construction, and be interpreted in a manner that is consistent with probability and the practical aspect of the transaction between the parties. *Westchester Fire Ins. Co. v. City of Brooksville*, 731 F. Supp. 2d 1298, 1306 (M.D. Fla. 2010), *aff'd* 465 Fed. Appx. 851 (11th Cir. 2012) (applying Florida law); *7-Eleven, Inc. v. Stin, L.L.C.*, 961 So. 2d 977, 981 (Fla. 4th DCA 2007). As a corollary, courts must avoid construing a contract in a manner that fails to give effect to all of its provisions, or would produce an absurd result. *Taylor v. Taylor*, 1 So. 3d 348, 350 (Fla. 1st DCA 2009); *Siegal v. Whitaker*, 946 So. 2d 1079, 1083 (Fla. 5th DCA 2006). The Court should accordingly reject the Twillmans' interpretation of Paragraph 7.B. of the Franchise Agreement.

## II. PIRTEK SATISFIES THE FACTORS SUPPORTING PRELIMINARY INJUNCTIVE RELIEF.

Pirtek has shown a likelihood of success on its claims. The noncompetition clause prohibits the Twillmans from operating "any business that sells products and services similar to the products and services sold by a Pirtek business" and from employing any employee of any other Pirtek franchise. *See* Ferretti Decl., Ex. C (Franchise Agrmt. ¶ 12.C.) The Twillmans do not dispute that they are operating a hydraulic hose company which, except for the name, is a spitting image of a Pirtek franchise (complete with mobile vans and MSSTs), and that they employ Pfaffenback and Wiele, who were employees of Pirtek Overland until the beginning of May 2016. (*See* Penning Decl., ¶ 7.)

Moreover, the Twillmans plainly calculated to steal Pirtek's goodwill and customers. At the very same time that they were telling Pirtek that they were merely putting the Pirtek investment on hold until the union issues died down, the Twillmans were working with the union [3] to take business from Pirtek Overland and give it to their new company, American Hydraulic. Indeed, by the time the Union sent its May 16, 2016, letter, the Twillmans had firmly positioned American Hydraulic to steal Pirtek's goodwill and customers. (Dee Twillman Decl., Ex. B.) The Union letter urged its union-shops not to do business with Pirtek Overland, but instead do business with the Twillmans' new company, a union shop. *Id.* The letter included a business card of Michael Tillman. *Id.* By May 1, 2016, the Twillmans had hired two Pirtek Overland employees to further their scheme to steal business

---

[3] The Twillmans go to great lengths to blame their decision to terminate their relationship with Pirtek on issues with the union, but Local 513 did not send out its first letter to Missouri Crane until March 9, 2016, **after** the Twillmans had already decided to cancel the Agreement (Defs' Resp. at 6; Dee Twillman Decl., Ex. A, B.)

from Pirtek. (Penning Decl., ¶¶ 7-8.) It is this sort of opportunist behavior that is one of the very reasons for a post-term noncompete in franchising, namely, to protect the franchisor's good will in the form of existing and future customers from theft by the former franchisee.

The Twillmans also do not persuasively rebut Pirtek's showing that the Twillmans used Pirtek's confidential information to establish and operate American Hydraulic in violation of the confidentiality clause.[4]  For example, they do not rebut Tim Hasting's declaration that the American Hydraulic vans were "identical" to Pirtek vans, including the outfitting and customizations. (*See* Hastings Decl., at ¶ 3.) They also do not dispute that they have been soliciting Pirtek's Missouri customers, who they learned of by hiring Wiele and Pfaffenback from the Pirtek Overland franchise.

These actions have caused Pirtek irreparable harm through, among other things, its continued loss of goodwill and customers. *See* Fla. Stat. § 542.335(1)(j) (violation of an enforceable covenant creates a presumption of irreparable harm);  *N. Am. Prods. Corp. v. Moore*, 196 F. Supp. 2d 1217, 1230 (M.D. Fla. 2002).  This Court has previously found Pirtek's customer relationships constitute a protectable legitimate business interest.  *See Pirtek USA, LLC v. Layer*, Bus. Franchise Guide (CCH) 13,257 (M.D. Fla. 2005), a copy of which is attached hereto as **Exhibit "A"**.

---

[4] In addition to the confidentiality clause in the Franchise Agreement, Michael and Dee Twillman also signed another confidentiality Agreement on February 3, 2016. (*See* Ferretti Decl.*,* Ex. A.)  The Twillmans make no argument that this confidentiality clause is unenforceable.

9

The other factors supporting preliminary injunctive relief also heavily favor Pirtek. The balance of harms weighs heavily in favor of Pirtek. *I Can't Believe It's Yogurt v. Gunn*, 1997 WL 599391, at *20 (D. Colo. Apr. 15, 1997) ("Courts are generally unsympathetic to franchisees who blatantly disregard covenants not to compete."). Also, the enforcement of restrictive covenants serves the public interest. *See Autonation, Inc. v. O'Brien*, 347 F. Supp. 2d 1299, 1308 (S.D. Fla. 2004).

### III. THE COURT SHOULD AWARD AN INJUNCTION PROHIBITING AMERICAN HYDRAULIC FROM OPERATING WITHOUT REQUIRING PIRTEK TO POST A BOND.

The Court has the discretion to set the amount of security or waive the security requirement of Rule 65(c) (*see BellSouth v. MCI Metro Access,* 425 F.3d 964, 971 (11th Cir. 2005)), and should exercise that discretion in favor of Pirtek because the Twillmans will suffer no harm from the Court granting Pirtek's preliminary injunction other than ceasing operation of their competing business.

| | |
|---|---|
| Date: August 19, 2016 | **BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC**<br>SunTrust Center<br>200 South Orange Ave., Ste. 2900<br>P.O. Box 1549 (32802)<br>Orlando, FL 32801<br>Tel: (407) 422-6600<br>Fax: (407) 841-0325<br>Counsel for Plaintiff |
| | By: *James M. Talley*<br>    JAMES M. TALLEY<br>    Florida Bar No.: 331961<br>    jtalley@bakerdonelson.com<br>    fedcts@bakerdonelson.com<br>    KYLE A. DIAMANTAS<br>    Florida Bar No.: 106916<br>    kdiamantas@bakerdonelson.com |

10

FAEGRE BAKER DANIELS
William L. Killion, MN # 55700
Nathan A. Brennaman, MN # 0331776
2200 Wells Fargo Center,
90 South Seventh Street
Minneapolis, MN 55402-3901
(612) 766-7000

**CERTIFICATE OF SERVICE**

I hereby certify that on August 19, 2016, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all parties of record.

Glenn Davis
HeplerBroom LLC
211 N. Broadway, Suite 2700
St. Louis, MO 63102
314/241-6160
Fax: 314/241-6116
Email: ged@heplerbroom.com

Usher L. Brown
Greenspoon Marder, PA
201 E Pine St Ste 500
Orlando, FL 32801-2718
407/425-6556
Fax: 407/425-6583
Email: larry.brown@gmlaw.com

/s/ *James M. Talley*
James M. Talley

11