Pirtek USA, LLC,

        Plaintiff,

vs.

Michael J. Twillman, Dolores M. Twillman,
and Donald J. Twillman

        Defendants.

_____/

## VERIFIED AMENDED COMPLAINT

Plaintiff Pirtek USA, LLC ("Pirtek"), as and for its Verified Amended Complaint against defendants Michael Twillman, Dolores ("Dee") Twillman, and Donald Twillman (collectively, "Defendants" or "the Twillmans"), states and alleges as follows:

## PARTIES

1.    Pirtek is a limited liability company organized under the laws of the state of Delaware with its principal place of business located at 501 Haverty Court, Rockledge, Florida.

2.    Pirtek's members and their respective citizenships are as follows:

(a)  Aquarius Equity Pty, Ltd is a citizenship of Australia and

(b)  Pandela Pty Ltd, in its capacity as trustee of Pandela Trust, is a citizen of Australia.

3.     Upon information and belief, Michael Twillman is an individual who resides in and is a citizen of the state of Missouri.

4.     Upon information and belief, Dolores Twillman (who goes by "Dee" Twillman) is an individual who resides in and is a citizen of the state of Missouri.

5.     Upon information and belief, Donald Twillman is an individual who resides in and is a citizen of the state of Missouri.

## JURISDICTION AND VENUE

6.     This is an action for unfair competition, fraud in the inducement, and breach of contract arising out of Defendants' actions and conduct as specified herein.

7.     This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(1) as this is an action between citizens of different states and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

8.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(2) in that a substantial part of the events giving rise to Pirtek's claims occurred in this District and the Franchise Agreement and Personal Guaranty that govern this dispute expressly provide that the Defendants irrevocably admit themselves to and consent to the jurisdiction of this Court.

## FACTUAL BACKGROUND

9.     Pirtek is an international franchise organization founded in 1997 with a U.S. headquarters in Rockledge, Florida.  Pirtek has over 30 years of experience in the hydraulic and industrial hose replacement field, and provides hydraulic and industrial hose services to customers across the United States through its 58 franchises in 23 states.  Pirtek is the only

franchisor of its kind currently operating in the United States. Pirtek makes its distinctive services and products available to the public via authorized franchisees.

10. Pirtek has developed a business system for the sale, custom assembly, and installation of industrial and hydraulic hoses, fixed tube assemblies, fittings, and related components and services for customers operating businesses in a variety of industries, including manufacturing, oil and gas, mining, construction, earthmoving and agriculture. Franchisees use the Pirtek business system to service and repair customer equipment at their customers' locations in the fastest possible time, minimizing downtime for the repair and service of such customers' equipment. Pirtek franchisees typically operate their business from a hose service center and through mobile sales and service units by which qualified technicians can be on-site within one hour, 24 hours a day, 7 days a week, 365 days a year.

11. Pirtek franchisees compete with other businesses within the equipment manufacturing hose and fitting market.

### The Twillmans Expressed Interest in, and Avidly Pursued, Becoming a Pirtek Franchisee

12. In early January, 2016, Pirtek received an online inquiry through Pirtek USA's website from Michael Twillman seeking additional information about owning a Pirtek franchise.

13. Approximately one week after submitting their online inquiry via Pirtek's website, Dee Twillman stated in a phone call with Steve Morris, Pirtek's Franchise Director, that the Twillmans were owners of a heavy equipment rental business, Missouri Crane, and were current Pirtek customers and very familiar with the services offered by their local Pirtek centers. Dee Twillman also stated that the Twillmans did not need to be sold on the Pirtek

franchising concept because she knew there was demand in the local business community and she understood the Pirtek business.

14. On February 2, 2016, Pirtek provided the Twillmans with a copy of the Pirtek Franchise Disclosure Document ("FDD"). The FDD, among other things, apprises prospective franchise owners of the nature of the Pirtek business, including a description of its distinctive products and services. The FDD also describes to prospective franchise owners Pirtek's business model, including its hose service centers, mobile sales and service units, and other standards, specifications, sales and business techniques, and the associated trademarks.

15. In the weeks leading up to the execution of the Franchise Agreement, the Twillmans appeared to be preparing expeditiously to do all that was necessary to launch their Pirtek franchise. For example, on January 29, 2016, Michael Twillman emailed Pirtek a link to the listing for the retail site in Wentzville, Missouri, that Twillman intended to lease for their Pirtek center. The Twillmans also worked with Pirtek personnel to identify a franchise territory.

16. During this time period, Dee Twillman informed Pirtek that Missouri Crane was staffed by employees who were union members. She stated that they wanted to set up their Pirtek franchise under Michael Twillman's name as an entirely separate company – unrelated to Missouri Crane – so that they could avoid any requirement that they hire union employees and pay union wages. Dee Twillman was adamant that the Pirtek franchise not use union employees. Dee also later indicated that she and Donald would nonetheless be very involved in the franchise, including securing the financing needed to get the franchise up and

running. Dee also indicated that she and Donald wanted to scale down and then eventually get out of the crane business. They thought that shifting over to a hydraulic hose company like a Pirtek franchise would be a better business opportunity for them in the long term.

17. The Twillmans also informed Pirtek that they intended to start their franchise by hiring two mobile sales and service technicians ("MSSTs") from the Overland, Missouri, Pirtek franchise ("Pirtek Overland"), Daniel Wiele and James Pfaffenback. Dee Twillman stated that these particular Pirtek Overland MSSTs had previously performed Pirtek-related work for Missouri Crane. Dee Twillman wanted to hire Wiele and Pfaffenback so that the Twillmans could get their Pirtek center up and running in short order and without having Wiele and Pfaffenback undergo the standard two-week MSST training program that untrained MSSTs would be required to complete at the expense of the hiring franchisee. Pirtek advised that, if the Twillmans did become a Pirtek franchise owner, it would work with them and the Pirtek Overland franchise to achieve a smooth transition so that the Twillmans' franchise might hire the two Pirtek Overland employees, but that the Twillmans must afford the Pirtek Overland franchise sufficient time to recruit and train replacements.

18. Prior to Michael Twillman's execution of the Pirtek Franchise Agreement and Michael, Dee, and Donald Twillman's execution of the related Personal Guaranty, Pirtek personnel were mindful, as was their practice, of the scope and nature of the information they shared with the Twillmans. That is, until the Twillmans signed and were bound by the strict confidentiality and non-compete provisions of the Pirtek Franchise Agreement, Pirtek personnel shared with them only general business information about Pirtek.

### The Twillmans Attended a Pirtek "Discovery Day" and Signed the Franchise Agreement

19.     The Twillmans attended a Pirtek "Discovery Day" at Pirtek's Florida headquarters. Discovery Day is a one-day event organized by Pirtek for potential franchisees to meet the Pirtek executive team and learn about a range of topics essential to successfully operating a Pirtek center, including without limitation franchise training and support, supply chain management, Pirtek products and services, service delivery logistics and financial controls. Prospective franchisees also typically tours the Franchise Support Center and the Pirtek Distribution Center on Discovery Day.

20.     Michael and Dee Twillman attended discovery day at Pirtek headquarters on February 19, 2016. Before they had attended all the scheduled events for the day, they indicated that they were ready to sign the Franchise Agreement. At Dee Twillman's request, who again stated concerns about the union employees of her Missouri Crane business, the Franchise Agreement and other documentation relating to their franchise were placed solely in Michael Twillman's name. Dee indicated that Donald also believed that this should be the case. Although the Twillmans indicated that they wanted to operate the Pirtek Franchise using non-union employees, they did not ask that this be a condition precedent to the enforceability of the Franchise Agreement. Glenn Duncan told Dee Twillman on Discovery Day that whether or not a Pirtek franchisee chooses to operate as a union shop is a decision left to each franchisee on an individual basis. Michael Twillman executed the Pirtek Franchise Agreement and Michael and Dee Twillman signed the Personal Guaranty on February 19, 2016. Thereafter, Michael's father, Donald Twillman, also signed the Personal Guaranty, subjecting him to the terms of the Franchise Agreement. On Discovery Day, Dee

Twillman also provided a $25,000 check to Pirtek covering half of the $50,000 franchise fee required of new franchisees. The check was written from the joint checking account of Dee and Donald Twillman. A true and correct copy of the Franchise Agreement is attached as Exhibit A; a true and correct copy of the Personal Guaranty is attached as Exhibit B.

21.     Section 6.E. of the Franchise Agreement prohibited the Twillmans from disclosing or using Pirtek's proprietary or confidential business information for any purpose except to operate their Pirtek Franchise:

> You may not, during the term of this Agreement or thereafter, communicate, divulge or use for the benefit of any other person or entity any Confidential Information, except to such employees as must have access to it in order to operate your Business. For purposes of this Agreement, "Confidential Information" means proprietary information contained in the Manual or otherwise communicated to you in writing, verbally, or through the internet or other online or computer communications, and any other knowledge or know-how concerning the methods of operation of our Business. Any and all Confidential Information, including, without limitation, processes, materials, methods, procedures, suggested pricing, specifications, techniques and other data, may not be used for any purpose other than conducting the Business in the Territory.

"Business" is a defined term under the Franchise Agreement, meaning: "your PIRTEK Business developed and operated pursuant to this Agreement."

22.     The Franchise Agreement, Section 12.C., also contains a non-compete provision applicable both during the term of the Franchise Agreement and following its termination:

> You (including specifically Principal Owner and also any Personal Guarantors as described in Section 16.F) may not engage as an owner, partner, director, officer, franchisee, employee, consultant, agent or in any other capacity in any other business that sells products and services similar to the products and services sold by a PIRTEK business within the Territory or 15 miles of the territory or any Promotional Zone or the territory or promotion zone of any other PIRTEK center for a period of 2 years after expiration or termination of

this Agreement. In addition, for the same 2-year period, you may not employ or seek to employ any person who is at that time employed by any other PIRTEK franchise or center or otherwise directly or indirectly induce such person to leave his or her employment. You expressly agree that the 2-year period and 15-mile radius are the reasonable and necessary time and distance needed to protect us if the Agreement expires or it terminated for any reason.

23.     Pirtek requires its franchisees to agree to a non-compete in order to protect its rights and interests, as well as the rights and interests of its other franchisees, including, among other things, the investment Pirtek makes in training and equipping franchisees, the message it sends to other franchisees if a franchise is allowed to compete at the end of the relationship, the ability of Pirtek to refranchise a particular area, freedom of Pirtek and its franchisees from unreasonable competition by former franchisees that Pirtek trained and equipped, protection of proprietary and confidential business information, and the protection of the good will of Pirtek and its franchisees (i.e., its right to develop and continue customer relationships).

24.     Pursuant to the terms of the Franchise Agreement, Defendants were granted a license to operate a Pirtek franchised business using the Pirtek unique business system and trademarks.   The territory contemplated by the parties generally comprised St. Charles County, Missouri.

### After the Twillmans Signed, Pirtek Gave Them Detailed Confidential Business Information That Provided a Road Map of How to Operate the Pirtek Franchise

25.     After Michael Twillman signed the Franchise Agreement and Michael, Dee, and Donald Twillman signed the Personal Guaranty, Pirtek personnel disclosed to them detailed financial information about Pirtek and the Pirtek franchise, including projections for gross receipts, gross profits, margins, labor charges and hourly wages and cashflows.

26. In addition, Pirtek personnel discussed with Michael and Dee Twillman target industries, target markets and solicitation of those markets, specifically with respect to their Missouri franchise.

27. As Pirtek was providing the Twillmans this important information about establishing their business, the Twillmans continued to appear to take steps toward establishing their franchise. For example, on February 22, 2016, the Twillmans formed Missouri Hydraulics & Services LLC, a Missouri entity, through which it would operate its Pirtek franchise. Likewise, on or about February 23 or 24, 2016, the Twillmans made an offer on a lease to secure a Pirtek storefront (center) and sent Pirtek interior photos of the intended lease space.

28. On March 2, 2016, Pirtek provided the Twillmans, in hard copy and electronic form, the Pirtek Start-Up Guide. As its name implies, the Start-Up Guide materials are a detailed road map for new Pirtek franchisees. The Start-Up Guide tells new franchisees what they need to know to start and operate a hose replacement and fluid transfer business and much more. Among the Start-Up Guide materials are detailed Pirtek center inventories and related costs. The materials also include an interactive electronic 2016 Pirtek pro forma, which reflects detailed cost estimates, budgets and calculated cash requirements applicable to the operation of a Pirtek franchise using a low-roof van option, which the Twillmans had indicated they intended to use. These materials provided the Twillmans with three years of profit and loss projections, a projected year-end balance sheet and cash flow analysis, payroll projections, and a detailed start-up questionnaire, addressing the number of vans, lease-

related budgets, licensing and permitting fees, technician wages, costs associated with various forms of insurance, and more.

29. The Start-Up Guide also included a detailed listing of the Pirtek mobile service equipment and van tool inventories, compensation/bonus schedules for Pirtek MSSTs, and Pirtek mobile service van options.

30. Pirtek would not have provided this confidential business information to the Twillmans had Michael Twillman not executed the Franchise Agreement and had Dee and Michael's father (Donald Twillman) not executed the Personal Guaranty, memorializing their intention to be bound by the terms of the Franchise Agreement. Pirtek also would not have shared such information with the Twillmans if it knew that the Twillmans would use it to start their own competing business.

### After Receiving the Start-Up Guide, the Twillmans Suddenly Attempted to "Cancel" the Franchise Agreement

31. Although they were, by all appearances, moving quickly to open their Pirtek franchise as promised in the Franchise Agreement, the Twillmans began plotting to get out from under the Franchise Agreement and get back the $25,000 partial franchise fee that they had paid to Pirtek. In filings by Defendants in the pending action, they claim that within three days of Dee Twillman's execution of her guaranty (or by February 22, 2016), the Twillmans discovered that a neighboring franchisee, Pirtek Overland, was having problems negotiating a union contract. The Twillmans, according to their filings, became concerned union issues faced by Pirtek Overland might negatively affect a non-union franchise in their territory. Over the course of the following 10 days, the Twillmans concluded that they could not open their Pirtek business as a non-union shop, which they now claim was the sole reason

for becoming a Pirtek franchisee. Although they could have opened their Pirtek location as a union shop, they concluded that they could make more money if they opened a union shop that was independent of Pirtek, thus avoiding paying promised royalties to Pirtek and even positioning them to steal customers from the Pirtek franchise in Overland. The problem, however, was that their Franchise Agreement contained a post-term noncompete that precluded them from opening a competing business. The solution for the Twillmans became a provision in the FDD that allowed a franchisee to "cancel" the Franchise Agreement and get back its franchise fee so long as it did so prior to beginning training.

32.     On or about March 3, 2016, the day after the Twillmans had received the Start-Up Guide from Pirtek, Dee Twillman informed Pirtek that the Twillmans wanted to cancel the Franchise Agreement. Michael, Dee, and Donald all signed a letter dated March 3, 2016, to Pirtek, indicating that they "cannot proceed," and requesting the return of the Twillmans' initial $25,000 franchise fee.

33.     On or about March 7, 2016, Pirtek Franchise Director Steve Morris called Dee Twillman. During the course of their conversation, Dee Twillman told Morris that the Twillmans had decided to wait on moving forward with their Pirtek franchise due to union issues. She further told him that she and Michael wanted to wait a few months for Oakland's union issues to blow over and then proceed again with their Pirtek franchise. Similarly, Michael Twillman, in a March 14, 2016, email, informed Karin Ferretti that the Twillmans wanted Pirtek to keep them in its database so that they would receive company announcements from Pirtek, further intimating that the Twillman's would proceed again with

the Pirtek franchise in a few months. A true and correct copy of the March 14, 2016, email from Michael Twillman to Karin Ferretti is attached as Exhibit E.

34.     Michael Twillman later sent an email to Pirtek to inform it that the Twillmans were returning the signed original of the Franchise Agreement.     Pirtek never received the original Franchise Agreement from the Twillmans.

35.     Substantial aspects of the Pirtek business system, including confidential and proprietary business information, were made available to the Twillmans by virtue of their participation in Discovery Day, at which time they signed the Franchise Agreement, and thereafter as Pirtek personnel moved forward with plans to get the Twillmans' Pirtek center up and running.  Pirtek would never have given the Twillmans this information if it knew that the Twillmans would later use it to establish a competing business in the same territory as the Pirtek franchise they had contracted for.

### The Twillmans Failed to Comply With Their
### Continuing Obligations Under the Franchise Agreement

36.     On March 14, 2016, Michael Twillman sent Pirtek a document, indicating that the Twillmans had terminated Missouri Hydraulics & Services, LLC, the entity they had formed to operate their Missouri Pirtek business.  Attached hereto as Exhibit C is a true and correct copy of Action by Unanimous Written Consent of the Members of Missouri Hydraulics & Services, LLC, directing dissolution of the company, and the accompanying cover email.

37.     The same day that the Twillmans cancelled their Pirtek franchise LLC (Missouri Hydraulics & Services, LLC), Michael Twillman filed Articles of Organization with the State of Missouri, forming American Hydraulic Services, LLC ("American

Hydraulic"). Although the Articles of Organization were filed on March 14, 2016, the signature block shows that they were prepared on behalf of the Twillmans by LegalZoom.com on March 7, 2016. The Twillmans had obviously asked LegalZoom.com to prepare the Articles of Organization for American Hydraulic prior to March 7, 2016. Attached hereto as Exhibit D is a true and correct copy of the Certificate of Organization and Articles of Organization for American Hydraulic Services, LLC. Dee Twillman is also involved in running American Hydraulic Services, including making hiring decisions for the company. Donald Twillman is also involved in American Hydraulic Services, including the decision-making for the business.

38. The Twillmans, on information and belief, have used Pirtek's confidential information, including the information contained in the Start-Up Guide, to establish American Hydraulic Services, as a competing business to Pirtek and its franchisees, providing the same mobile hydraulic services as Pirtek in the same territory, St. Charles County, Missouri. As part of the business, American Hydraulic Services sells, assembles and installs industrial and hydraulic hoses, fixed tube assemblies, fittings and related components. The Twillmans, through American Hydraulic Services, are performing not only the same services as those performed by Pirtek franchisees, they are using the very same MSSTs as had previously worked for Pirtek Overland.

39. The Twillmans through American Hydraulic Services now employ two former MSSTs of Pirtek Overland—the same two individuals that Dee Twillman had previously told Pirtek she would like to hire for the Twillmans' Pirtek franchise. Wiele and Pfaffenback left

their employment with Pirtek Overland on May 1, 2016, and joined American Hydraulic Services shortly thereafter.

40.    The Twillmans' employment of Wiele and Pfaffenback is a violation of those individuals' non-compete obligations to Pirtek Overland, their former employer, and of the non-compete provision in Section 12.C of the Franchise Agreement.

41.    Wiele and Pfaffenback have solicited the business of customers of the Pirtek Overland on behalf of their new employer American Hydraulic Services.

42.    Wiele and Pfaffenback also, on information and belief, have used confidential information they acquired by virtue of their Pirtek Overland employment, such as knowledge of Pirtek Overland customer pricing, budgets, services used, and even Pirtek Overland customer identities, in connection with their work on behalf of American Hydraulic Services.

43.    The Twillmans' continuing and deliberate conduct is causing, and will continue to cause, irreparable harm to Pirtek. The Twillmans' conduct demonstrates their intent to undermine the Pirtek business system and to misappropriate Pirtek's protected confidential and proprietary information.

44.    Although the Twillman's attempted to "cancel" the contract, the confidentiality and non-compete clauses are enforceable, by their very terms, regardless of how the parties to the contract part ways. Also, Pirtek cannot be held to have waived its rights under these provisions, especially given that the Twillmans' "cancellation" and request for return of the franchise fee were based on the fraudulent pretense that the Twillmans merely wanted to wait a few months until union concerns blew over and then proceed again

with the franchise. The Twillmans deceptively concealed that they would use the information to establish a new business and compete with Pirtek.

45.     Although the Franchise Agreement generally provides for the parties to arbitrate disputes, it specifically allows Pirtek, notwithstanding the arbitration provisions, to file for injunctive relief in Federal District Court for the Middle District of Florida to enjoin violations of the Agreement:

> In the event of a breach or threatened breach of any of the Terms of this Agreement by you, we will forthwith be entitled to an injunction restraining such breach and/or a decree of specific performance...

Franchise Agreement, Exhibit A, Sections 13.B. & 16.I.1.

## COUNT I: BREACH OF CONTRACT—COVENANT NOT TO COMPETE

46.     Pirtek hereby incorporates paragraphs 1 through 45 herein.

47.     The Twillmans have breached the non-compete provisions of the Franchise Agreement by selling products and services similar to the products and services sold by a Pirtek business within the St. Charles County, Missouri, area, within 15 miles of the that area, and within the territory zone of the Pirtek Overland.

48.     The Twillmans have further breached the non-compete provisions of the Franchise Agreement by employing mobile technicians Wiele and Pfaffenback, who were employed, until May 1, 2016, by the Pirtek Overland center.

49.     The Twillmans are involved in the operation of a directly competitive business which performs the same services as Pirtek franchisees and are competing in the same territory and calling on customers of other Pirtek franchisees.

50.     As a result of Twillmans' involvement in the operation of a directly competitive business, operating in the same territory as formerly licensed to them by the Franchise Agreement and using former Pirtek Overland MSSTs who are calling on Pirtek Overland customers, Pirtek has suffered irreparable harm and will continue to suffer irreparable harm as a result of the Twillmans' continued breach of the non-compete provisions the Franchise Agreement.

51.     Pirtek has no adequate remedy at law to protect its substantial business and property rights. The damages from the Twillmans' activities are considerable and continuing and thus not capable of ascertainment at this time.

52.     The Twillmans have willfully violated the non-compete provisions of the Franchise Agreement in order to develop and operate a directly competitive business.

53.     The Twillmans' violation of their non-compete is causing irreparable harm and damage to Pirtek and its other franchisees, including the Pirtek Overland center.

54.     Pirtek is entitled to preliminary and permanent injunctive relief enforcing the non-compete provisions of the Franchise Agreement.

## COUNT II: BREACH OF CONTRACT--CONFIDENTIALITY OBLIGATIONS

55.     Pirtek hereby incorporates paragraphs 1 through 45 herein.

56.     As described above, the Twillmans have failed to comply with their contractual obligations to maintain the confidentiality of the valuable and confidential business information disclosed to them by Pirtek prior to their termination of the Franchise Agreement.

57.     The Twillmans have acquired critical knowledge of how to launch and operate a Pirtek center (or non-Pirtek equivalent business) and mobile service units by virtue of their receipt of the Pirtek Start-Up Guide and their detailed communications with Pirtek personnel regarding the financial and operational requirements of the business.

58.     By operating American Hydraulic Services, LLC – a company Defendants formed the same day that they dissolved their Pirtek franchise entity and that provides the same services as a Pirtek franchise – the Twillmans are using the information and knowledge they acquired as Pirtek franchisees for the benefit of another entity.

59.     By employing Wiele and Pfaffenback, former Pirtek Overland Senior MSSTs, the Twillmans are wrongfully using the confidential business information and training that Wiele and Pfaffenback acquired by virtue of their employment with the Pirtek Overland franchise for the benefit of American Hydraulic Services, LLC.

60.     The Twillmans' failure to comply with their obligations not to use Pirtek's confidential information as set forth in the Franchise Agreement is causing irreparable harm and damage to Pirtek, including damages to the book of business of its franchisees in the area, including the Pirtek Overland.

61.     Pirtek has no adequate remedy at law to protect its substantial business and property rights and the damages from the Twillmans' failure to comply with their obligations not to use Pirtek's confidential information are continuing and significant.

62.     Pirtek is entitled to preliminary and permanent injunctive relief enforcing all post-termination obligations of the Franchise Agreement.

## COUNT III – FRAUDULENT INDUCEMENT

63.     Pirtek hereby incorporates paragraphs 1 through 45 herein.

64.     The Twillmans claim, for the first time in the pending action, that their "cancellation" of the Franchise Agreement is the same as a rescission of the Agreement thus relieving them of all promises they made in the Agreement, including their promise not to compete at the end of the franchise relationship. As a matter of law and the intention of the parties, the "cancellation" relieved the Twillmans of only executory obligations under the Agreement. The post-term noncompete is not an executory obligation and was not obviated by the "cancellation." Even if the "cancellation" otherwise acted to relieve the Twillmans of all of their promises, the Twillmans fraudulently induced Pirtek to agree to the cancellation and Pirtek has a right, which it is exercising, to rescind the cancellation agreement, all as more fully appears in the following paragraphs.

65.     By March 3, 2016, when the Twillmans attempted to "cancel" the Franchise Agreement and abort their efforts to establish a Pirtek franchise, the Twillmans had already decided to exploit, for their own financial gain, the Pirtek Overland franchises issues with the union, Local 513. As of March 3, 2016, and certainly by March 7, 2016, when Dee Twillman spoke to Pirtek Franchise Director, Steve Morris, the Twillmans had already decided to establish a competing hydraulic hose business, American Hydraulic, as a union shop to stay in the good graces of Local 513, and to use their new business to steal Pirtek's good will (i.e., its existing and potential customers). By March 9, 2016, Local 513 had sent a letter to contractors in the area indicating that it "appears unlikely that a contract [with Pirtek Overland] can be reached." A true and correct copy of the March 9, 2016, letter from Local

513 to Missouri contractors, including Missouri Crane, is attached hereto as Exhibit F. By May 16, 2016, the Twillmans' competing business had become one of the union's favored hydraulic hose vendors. In a letter of that date, the union recommended to hundreds of union contractors that they not use Pirtek Overland, but that they instead use American Hydraulic. The union letter enclosed with the letter one of American Hydraulic's business cards with contact information for American Hydraulic. A true and correct copy of the May 16, 2016, letter from Local 513 to Missouri contractors, including Missouri Crane, is attached hereto as Exhibit G. In addition, by May 3, 2016, the Twillmans consummated their plan to hire two former employees of Pirtek Oakland, Wiele and Pfaffenback, and thereby caused Wiele and Pfaffenback to breach their own noncompete agreement with Pirtek Overland. Wiele and Pfaffenback began immediately to solicit customers of the Pirtek Overland who were also customers of Pirtek Oakland and Pirtek.

66.     During a March 7, 2016, telephone call between Dee Twillman and Pirtek Franchise Director, Steve Morris, Dee Twillman, on behalf of all the Twillmans, made misrepresentations of material fact to Pirtek upon which the Twillmans intended Pirtek to rely to its detriment. Dee Twillman falsely represented to Morris that the Twillmans had decided to wait on moving forward with their Pirtek franchise for a few months due to Pirtek Overland's union issues, but would proceed again with their Pirtek franchise when those union issues had blown over. During that March 7, 2016, telephone conversation, Dee Twillman asked Pirtek to return the Twillmans' $25,000 partial franchise fee. Michael Twillman, in a March 14, 2016, email, made another false representation of material fact when he said that the Twillmans wanted Pirtek to keep them in their database so that they

would receive company announcements from Pirtek, thereby continuing to further the Twillmans' misrepresentation that would proceed again with the Pirtek franchise in a few months. *See* Exhibit E, attached.

67.     Dee Twillman's statements in the March 7, 2016, conversation and Michael Twillman's statement in his email of March 14, 2016, were false and known by Dee and Michael Twillman to be false at the time they were made—the Twillmans had no intention of proceeding again with their Pirtek franchise in a few months after the Pirtek Overland franchisee's union issues had blown over. In fact, at the very time that the Twillmans were representing on March 7, 2016, that they would proceed again with Pirtek, they had already set in motion the formation of American Hydraulic as a union shop to compete with Pirtek and its franchisees, using confidential, proprietary information obtained from Pirtek and by hiring Pfaffenback and Wiele. *See* Exhibit D (showing that LegalZoom.com had already prepared, on behalf of the Twillmans, Articles of Organization for American Hydraulic by March 7, 2016). Even though the Twillmans could have opened their Pirtek franchise as a union shop, they elected to form a separate company (American Hydraulic) so as to exploit the issues that the neighboring Pirtek Overland franchise was having with the Local 513. As set forth above, by May 16, 2016, Local 513 was telling union shops not to do business with Pirtek, but to do business with Twillman's company, American Hydraulic. *See* Exhibit G. When coupled with their hiring of Wiele and Pfaffenback, the Twillmans' plan to steal Pirtek's goodwill was complete.

68.     The Twillmans knew that if they had told Pirtek the truth, Pirtek would never have returned their $25,000 and would never have accepted their cancellation of the

Franchise Agreement, and in fact, Pirtek would not have done so if Twillmans had not lied to them.

69. The Twillmans also did not disclose to Pirtek their alleged belief that their cancellation of the Franchise Agreement operated as a legal rescission and thus voided the post-term noncompete. They knew that had they disclosed this belief, Pirtek would insist on enforcement of the noncompete in the Franchise Agreement when it learned of the Twillmans' competing business.

70. Pirtek justifiably relied on the Twillmans' statement that they would come back to Pirtek in a few months to proceed again with their Pirtek franchise and have been injured thereby. Had the Twillmans told the truth to Pirtek that they planned to open their own competing hydraulic hose company to exploit the union issues of Pirtek Overland and to steal Pirtek's current and prospective customers in the territory, Pirtek would not have returned the $25,000 initial franchise fee and would instead have insisted that the Twillmans honor their noncompete obligations by not opening or operating a competing business for a two-year period. Nor would Pirtek have cancelled the Franchise Agreement had it known that the Twillmans planned to claim that doing so obviated the noncompete. The Twillmans' deceitful and fraudulent statements and failures to disclose constitute fraud and their exploitation of the "union issues" in Missouri to their own ends, in violation of the confidentiality and noncompetition clauses of the Franchise Agreement, have led directly to the loss of Pirtek customers and goodwill, among other injuries.

71. By reason of the foregoing, Pirtek is entitled to rescind the "cancellation," if it in fact operates as a rescission, and hereby does rescind the cancellation.

**WHEREFORE**, Pirtek requests the following relief:

1.  For a preliminary and permanent injunction against Dolores, Donald, and Michael Twillman, their agents – including American Hydraulic Services, LLC, Wiele and Pfaffenback – servants, employees and attorneys, and all others in active concert or participation with them, preventing them from using Pirtek confidential information for the benefit of themselves or any business entity;

2.  For a preliminary and permanent injunction against Dolores, Donald, and Michael Twillman, their agents – including American Hydraulic Services, LLC, Wiele and Pfaffenback – servants, employees and attorneys, and all others in active concert or participation with them, preventing them from violating the terms of the non-compete provisions of the Franchise Agreement;

3.  For judicial rescission of the cancellation, if it in fact operates as a rescission;

4.  For Pirtek's costs, disbursements, and attorneys' fees incurred in this action, as allowed by the Franchise Agreement; and

5.  For such other and further relief as the Court deems just and proper.

Dated: August 29, 2016

**BAKER, DONELSON, BEARMAN,**
**CALDWELL & BERKOWITZ, PC**
SunTrust Center
200 South Orange Ave., Ste. 2900
P.O. Box 1549 (32802)
Orlando, FL 32801
Tel: (407) 422-6600
Fax: (407) 841-0325
Counsel for Plaintiff

By: ___/s/James M. Talley_____

JAMES M. TALLEY
Florida Bar No.: 331961
jtalley@bakerdonelson.com
fedcts@bakerdonelson.com
KYLE A. DIAMANTAS
Florida Bar No.: 106916
kdiamantas@bakerdonelson.com

Faegre Baker Daniels LLP
William L. Killion (MN Bar ID #55700)
Nathan A. Brennaman (MN Bar ID #0331776)
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55492
Telephone: (612) 766-8727
Facsimile: (612) 766-1600
William.Killion@FaegreBD.com
Nate.Brennaman@FaegreBD.com

ATTORNEYS FOR PIRTEK USA, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on August 29, 2016, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all parties of record.

Glenn Davis
HeplerBroom LLC
211 N. Broadway, Suite 2700
St. Louis, MO 63102
314/241-6160
Fax: 314/241-6116
Email: ged@heplerbroom.com

Usher L. Brown
Greenspoon Marder, PA
201 E Pine St Ste 500
Orlando, FL 32801-2718
407/425-6556
Fax: 407/425-6583
Email: larry.brown@gmlaw.com

/s/ *James M. Talley*
James M. Talley

## VERIFICATION

I, Karin Ferretti, a citizen of the United States and resident of the State of Florida, am the

Franchise Development Administrator of Pirtek USA, LLC. I have read the foregoing

Verified Amended Complaint and declare under penalty of perjury that the facts and

allegations contained in the Verified Amended Complaint to which this Verification is

attached are true, except so far as they are therein stated to be on information or belief,

and that, so far as they are therein stated to be on information and belief, I and therefore

Pirtek USA, LLC, believe them to be true.

Karin Ferretti
Pirtek USA, LLC Franchise Development Administrator
Date: August 29, 2016

US.107945266.01