UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

Civil No. 6:16-cv-01302-RBD-TBS

Pirtek USA, LLC,

      Plaintiff,

vs.

Michael J. Twillman, Dolores M. Twillman,
and Donald J. Twillman,

      Defendants.
_____

**PIRTEK USA, LLC'S RESPONSE IN OPPOSITION TO DEFENDANTS' JOINT MOTION TO DISMISS WITH INCORPORATED MEMORANDUM OF LAW**

Defendants move to dismiss Pirtek's entire complaint on the theory that their "cancellation" of the Franchise Agreement was the same as a rescission and relieved them of any obligations that would otherwise survive termination, including the obligation not to compete. In fact, the cancellation relieved Defendants of only executory obligations, and the promise not to compete was not executory. Defendants also argue that Pirtek's claim of fraudulent inducement should be dismissed for lack of particularity. Pirtek has amended its complaint to include facts that have come to light in Defendants' response to Plaintiff's motion for a preliminary injunction. (Pirtek has a right to amend its Complaint, without a motion and without leave of Court, until September 2, 2016, under Fed. R. Civ. P. 15(a)(1)(B) (allowing Amendment of a Complaint as a matter of course without court leave "21 days after service of a motion under Rule 12").) The facts as disclosed in Defendants' responsive pleadings and as set forth in Plaintiff's amended complaint establish that if

cancellation is the same as rescission then Pirtek was fraudulently induced into agreeing to the cancellation and is not bound to it.

## ARGUMENT

### I. LEGAL STANDARD

In considering a motion to dismiss, a "court must take all material allegations of the complaint as true, and liberally construe those allegations in favor of the plaintiff." *Gill v. Three Dimension Systems, Inc.*, 87 F. Supp. 2d 1278, 1281 (M.D. Fla. 2000). A complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Taylor, Bean & Whitaker Mortg. Corp. v. GMAC Mortg. Corp.*, 2008 WL 3200286, at *2 (M.D. Fla. Aug 6, 2008) (quotations and citations omitted). "[T]he court should not dismiss a complaint unless it appears that there is no possibility that the plaintiffs can recover under the allegations of the complaint." *Gill*, 87 F. Supp. 2d at 1281. The threshold of sufficiency that a complaint must meet to survive a motion to dismiss for failure to state a claim is…'exceedingly low.'" *Ancata v. Prison Health Servs.*, 769 F.2d 700 (11th Cir. 1985) (quoting *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Devel.*, 711 F.2d 989, 995 (11th Cir. 1983)).

In light of these standards, the significant facts are those set forth in Plaintiff's amended complaint.

### II. DEFENDANTS' CLAIM OF RESCISSION

Contract rescission is a harsh result generally disfavored by courts. *E.g., Rood Co. v. Bd. of Pub. Instruction of Dade Cty.*, 102 So. 2d 139, 142 (Fla. 1958); *Steinberg v. Bay*

*Terrace Aprtm. Hotel, Inc.*, 375 So. 2d 1089, 1092 (Fla. DCA 1979). Contracts may not be unilaterally rescinded by one of the parties unless there are legally recognized grounds to do so. *Bland v. Freightliner LLC*, 206 F. Supp. 2d 1202, 1206 (M.D. Fla. 2002). These grounds include fraud, accident, or mistake in the procurement of the contract. *E.g., Essex Ins. Co. v. Zota*, 607 F. Supp. 2d 1340, 1351 (S.D. Fla. 2009), *aff'd* 408 Fed. Appx. 323 (11th Cir. 2011) (construing Florida rescission law). The Amended Complaint obviously does not allege that Plaintiff committed fraud or that the franchise agreement was procured by any kind of accident or mistake.

Nor has Plaintiff alleged any facts that must cause the Court to conclude that the parties, as a matter of law, mutually rescinded the Franchise Agreement. The Franchise Agreement, which is a part of the complaint by reference, refutes any claim of rescission. The Agreement at paragraph 16.B specifically states that it "may not be waived, altered ***or rescinded***, in whole or in part, ***except by a writing signed by you and us.***" *See* Amended Complaint Ex. A, ¶ 16.B) (emphasis added). Nothing in the Amended Complaint alleges that the parties signed a document purporting to rescind the Franchise Agreement. The facts alleged in the Amended Complaint simply do not support unilateral or mutual rescission between the parties in this case.

The Twillmans' motion to dismiss, like their opposition to Pirtek's preliminary injunction motion, comes down to the argument that the cancellation of a contract is the same as its rescission. As support, Defendants cite to publications that refute the argument or do not address it at all. The Twillmans' refer to an outdated edition of Black's Law Dictionary as proof that rescission and cancellation are the same, but the most recent edition states the

opposite. It says that "the effect of cancellation is generally the same as that of termination, except that the canceling party retains remedies for breach of the whole contract or any unperformed balance." *Cancellation*, BLACK'S LAW DICTIONARY (10th ed. 2014). Particularly curious is the Twillmans' reliance on *Hymowitz v. Drath*, 567 So. 2d 540, 542 (Fla. 4th DCA 1990). The court did not state in *Hymowitz* that cancellation and rescission are one and the same. Indeed, that issue was not before the court. The court said that when arbitrators "cancelled" a promissory note because of fraud it had the effect of rescinding a shareholder agreement. Because the shareholder agreement contained the commitment to arbitrate, the court found that its rescission meant that the arbitrators had no authority to cancel the notes. The decision offers no lessons for the pending action. *Id.*

A rescission renders the contract abrogated and of no force or legal effect from the beginning. *United Auto Ins. Co. v. Salgado*, 22 So. 3d 594, 603 (Fla. DCA 2009). In contrast, cancellation ends the contract as of the date the cancellation becomes effective—it does not operate retroactively, as does rescission. *Id. See also NMSBPCSLDHB v. Cty. of Fresno*, 152 Cal. App. 4th 954, 959 (2007) ("Rescission is a retroactive termination of a contract, as compared to cancellation, which is a prospective termination.") (internal quotations omitted); *Imperial Casualty & Indemnity Co. v. Sogomonian*, 198 Cal. App. 3d 169, 182 (1988) (recognizing rescission is retroactive, whereas cancellation is prospective); *Glockel v. State Farm Mut. Auto. Ins. Co.*, 400 N.W.2d 250, 255 (Neb. 1987) (recognizing cancellation terminates an insurance contract at the time cancellation becomes effective and does not rescind the contract such that it was void ab initio); *ABC Outdoor Advert., Inc. v. Dolhun's Marine, Inc.*, 157 N.W.2d 680, 683 n.2 (Wis. 1968) (recognizing "'[t]ermination'

or 'cancellation' of conditional contract means to abrogate so much of it[] as remains unperformed…[as] distinguished from 'rescission.'"). The Uniform Commercial Code as adopted in Florida explains the difference as follows:

> 680.505. CANCELLATION AND TERMINATION AND EFFECT OF CANCELLATION, TERMINATION, RESCISSION, OR FRAUD ON RIGHTS AND REMEDIES.
> (1) On cancellation of the lease contract, all obligations that are still executory on both sides are discharged, but any right based on prior default or performance survives, and the cancelling party also retains any remedy for default of the whole lease contract or any unperformed balance.
> (2) On termination of the lease contract, all obligations that are still executory on both sides are discharged but any right based on prior default or performance survives.
> (3) Unless the contrary intention clearly appears, expressions of "cancellation," "rescission," or the like of the lease contract may not be construed as a renunciation or discharge of any claim in damages for an antecedent default.
> (4) Rights and remedies for material misrepresentation or fraud include all rights and remedies available under this Article for default.
> (5) Neither rescission nor a claim for rescission of the lease contract nor rejection or return of the goods may bar or be deemed inconsistent with a claim for damages or other right or remedy.

FLA. STAT. ANN. § 680.505 (West 2016).

Cancellation of a contract is akin to its termination; not its rescission. As even the Twillmans acknowledge, termination preserves the remedy of damages for breach. (Defs.' Resp. to Prelim. Inj., at 5) (citing *Generaux v. Dobyns*, 134 P.3d 983, 987 (Ore. 2006)). Professors Brooks and Stremitzer describe the difference between cancellation and rescission as follows:

> Rescission undoes the agreement, eliminating all obligations under the contract from the time of breach going forward and backward (ex tunc or ab initio effect). When obligations are eliminated only going forward from the time of breach (ex nunc effect), avoidance, termination, and cancellation are often usefully invoked as distinct remedies.

5

Richard R.W. Brooks and Alexander Stremitzer, *Remedies On and Off Contract*, 120 YALE. L.J. 690, 692 n.2 (2011).

Noncompete and confidentiality provisions in contracts are not executory and therefore are not discharged by cancellation of a contract. *E.g.*, *In re Sjoquist*, 484 B.R. 207, 214-15 (Bankr. C.D. Cal. 2012) (noncompete and confidentiality provisions in sales agreement not executory and therefore not subject to rejection under Bankruptcy Code); *In re Printronics, Inc.*, 189 B.R. 995, 1000-01 (Bankr. N.D. Fla. 1995) (rejection of franchise agreement did not terminate agreement's noncompete covenant because rejection obviates only executory obligations, and noncompete was not executory); *In re Hirschhorn*, 156 B.R. 379, 389 (Bankr. E.D.N.Y. 1993) (noncompete provision in office sublease not executory and therefore not subject to rejection under Bankruptcy Code); *In re Noco, Inc.*, 76 B.R. 839, 843 (Bankr. N.D. Fla. 1987) (noncompete provision in franchise agreement not executory and therefore not subject to rejection under Bankruptcy Code). The right to cancel does not allow the Twillmans to escape their obligations under the confidentiality and noncompetition clauses of the Franchise Agreement or the FDD.

Not only does the law distinguish rescission and cancellation, the specific facts in this case, as alleged and as supported by the record, belie any claim that they are the same. The description of the cancellation rights in the Item 5 clause merely reflects the reality that Pirtek will not force a franchisee to open a franchise if it decides that the hydraulic hose business is not a good fit, so long at it gives Pirtek notice of cancellation before the start of training. It is unreasonable to believe that the right of cancellation is designed to excuse the franchisee from any and all obligations under the Franchise Agreement. For example, the

franchisee's duty under the Franchise Agreement to maintain certain information confidential surely does not end upon the franchisee saying it is cancelling the Franchise Agreement. Similarly, it makes no sense that Pirtek was giving the Twillmans free reign to steal customers just because they "cancelled" the Franchise Agreement.

Nor did the Twillmans believe that their right to "cancel" gave them the right to avoid the post-term noncompete. If they truly believed this, they would have been upfront with Pirtek. They would not have lied to Pirtek by concealing their plan to compete and misrepresenting that they intended to resume the Pirtek franchise process once the union issues blew over. They knew full well that Pirtek would not give them back their $25,000 and would never have allowed them to escape their obligations through "cancellation," had they been truthful. Finally, the Twillmans' obligations under the noncompetition and confidentiality clauses were not rescinded or abrogated because they and Pirtek did not sign an agreement to rescind as required by the plain language of the Franchise Agreement itself. (*See* Am. Complaint, Ex. 1, Franchise Agreement ¶16.B.) Similarly, the Agreement specifically stated that the noncompete survived termination, which is the equivalent of cancellation.

The Court should also reject the Twillmans' claim that paragraph 7.B of the Franchise Agreement allowed them to essentially rescind the agreement (i.e., treat it as if it never existed by adjusting its "effective date"). The argument flies in the face of the Agreement's explicit "Effective Date" provision, ¶ 16.P., which states the effective date is "designate[d] [] on page one of this Agreement"—February 19, 2016. *See* Am. Compl., Ex. A (Franchise Agreement ¶ 16.P).

Moreover, by its plain language, paragraph 7.B protects **Pirtek** from franchise applicants who, in the course of the training, demonstrate themselves to be incapable of running a successful franchise. The clause is a relief valve designed to end the franchise agreement if the franchisee did not complete training to Pirtek's satisfaction. The clause presupposes that the franchisee made a good faith effort to complete the training program to Pirtek's satisfaction. It obviously does not give the franchisee a right to rescind the Agreement at any time before it completes training (even on the last day of the training program), as the Twillmans argue here.

Interpreting the Franchise Agreement as requested by the Twillmans would read out of the Agreement all of Pirtek and the Twillmans' pre-training rights, most notably Pirtek's license to use Pirtek's trademarks and operate a Pirtek franchise "for a period of 10 years from the date of this <u>Agreement</u>"—not for a period commencing after the completion of training. *See* Am. Compl., Ex. A, at 4 (emphasis added). It is a fundamental principle of contract interpretation that contracts must be given a reasonable construction and be interpreted in a manner that is consistent with probability and the practical aspect of the transaction between the parties. *Westchester Fire Ins. Co. v. City of Brooksville*, 731 F. Supp. 2d 1298, 1306 (M.D. Fla. 2010), *aff'd* 465 Fed. Appx. 851 (11th Cir. 2012) (applying Florida law); *7-Eleven, Inc. v. Stin, L.L.C.*, 961 So. 2d 977, 981 (Fla. 4th DCA 2007). As a corollary, courts must avoid construing a contract in a manner that fails to give effect to all of its provisions or would produce an absurd result. *Taylor v. Taylor*, 1 So. 3d 348, 350 (Fla. Ct. App. 2009); *Siegal v. Whitaker*, 946 So. 2d 1079, 1083 (Fla. 5th DCA 2006). The Court

should accordingly deny the Twillmans' motion to dismiss and instead find that the noncompetition and confidentiality clauses are effective and enforceable.

### III. PIRTEK'S FRAUDULENT INDUCEMENT CLAIM

The elements for fraudulent inducement under Florida law are: (1) false statement regarding a material fact; (2) knowledge by the person making the statement that the representation is false; (3) intent by the person making the statement to induce action; and (4) reliance on the representation to the injury of the other. *See Mettler, Inc. v. Ellen Tracy, Inc.*, 648 So. 2d 253 (Fla. 2d DCA 1994); *Florida Software Systems, Inc. v. Columbia/HCA Healthcare Corp.*, 46 F. Supp. 2d 1276 (M.D. Fla. 1999).

Pirtek has set forth its fraud claims with particularity in its Amended Complaint. The Amended Complaint:

> sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*Tello v. Dean Witter Reynolds, Inc.,* 494 F.3d 956, 972 (11th Cir.2007) (quoting *Ziemba v. Cascade Int'l, Inc.,* 256 F.3d 1194, 1202 (11th Cir. 2001)). Moreover, as has been previously determined in this district, the 9(b) "particularity requirement must be read in conjunction with the notice pleading standard of Rule 8." *Taylor, Bean & Whitaker Mortg. Corp. v. GMAC Mortg. Corp.*, 2008 WL 3200286, at *2 (M.D. Fla. Aug. 6, 2008). This means that "while the circumstances of fraud must be alleged with specificity, absolute particularity is not required, especially when some matters are beyond the knowledge of the pleader and can only be developed through discovery." *Id.*

Pirtek's amended Count III, paragraphs 63-70 of the Amended Complaint, alleges that Dee Twillman lied to Pirtek Franchise Director Steve Morris that the Twillmans merely wanted to "wait a few months for union issues to blow over" and then proceed with the Pirtek franchise. In truth, the Twillmans had already decided to exploit Pirtek Overland's "union issues" by opening American Hydraulic and stealing Pirtek's customers and its goodwill in the territory. Am. Comp. ¶¶ 63-70.

If Dee Twillman would have been honest and told Pirtek of the Twillmans' plans to open its own business in the exact image of Pirtek's own business system—using confidential Pirtek information and Pirtek Overland's employees Pfaffenback and Wiele to steal Pirtek's customers and therefore goodwill—Pirtek would never have returned the $25,000 and would never have acquiesced in the cancellation, particularly if it had any concern that the cancellation might void the confidentiality and noncompetition provisions of the Franchise Agreement. *Id.*

As now plead, Pirtek's fraudulent inducement claim satisfies the elements for such claim and the requirements of Rule 9(b). The statement made by Dee Twillman (on behalf of all the Twillmans) to Steve Morris on or about March 7, 2016 was a misrepresentation of material fact that Dee Twillman knew to be false when made. *Id.* ¶ 67. Indeed, by February 22, 2016, Dee Twillman already knew of the union issues and knew by March 3, 2016, that she would not be going forward with the Pirtek franchise at all. *Id.* ¶¶ 31, 67. By March 7, 2016, the Twillmans already had Articles of Organization for their competing company prepared by a third party. *Id.* ¶ 67, Ex. D. Just days later, Michael Twillman filed papers with the Missouri Secretary of State establishing American Hydraulic, and by May 16, 2016,

the Twillmans had Local 513 promoting its business and distributing its business cards to hundreds of contractors in the area as the unions preferred alternative to Pirtek Overland. *Id.* ¶¶ 37, 65, 67.

Dee Twillman also intended for Pirtek to rely on the misrepresentation to return the Twillmans' $25,000 and agree to cancellation. *Id.* ¶¶ 64-69. Finally, Pirtek justifiably relied on the Twillmans' statement of intent and has been injured by, among other things, the loss of customers and goodwill in the Missouri territory. *Id.* ¶ 70.

Pirtek's fraudulent inducement claim should not be dismissed, as courts of this district have routinely denied motions to dismiss fraudulent inducement claims on 9(b) grounds for complaints that provide far less detail than Pirtek's Amended Complaint does here. *See, e.g., Taylor*, 2008 WL 3200286, at *1-2 (M.D. Fla. Aug. 6, 2008) (denying motion to dismiss a fraudulent inducement claim involving alleged "omissions," even though plaintiff did not identify exactly when such disclosure should have been made or exactly who had a duty to disclose); *Gill*, 87 F. Supp. 2d at 1285 ("[P]laintiff has pleaded fraud with the specificity required by Rule 9(b) [because he] state[d] the details of the defendant's fraudulent acts, when they occurred, and who engaged in them.").

Also, because the Amended Complaint alleges the specific date, content, and speakers involved in the alleged misrepresentations, none of the cases relied on by the Twillmans help support their arguments under Rule 9(b). For example, *Advisor's Capital Investments, Inc. v. Cumberland Cas. & Sur. Co.*, 2007 WL 220189 (M.D. Fla. Jan. 26, 2007), is distinguishable on its facts. There, the court found that "the complaint altogether fails to allege any type of relationship or communications between Plaintiffs and [the principals and executives of the

defendant against whom Plaintiff was alleging fraudulent inducement.]" *Id.* at *3. The same is not true here. Each defendant, by signing the Franchise Agreement and Personal Guaranty, had a substantial relationship with Pirtek, and the signing of those agreements constituted the Twillmans' representations to Pirtek that they desired to open a Pirtek franchise—fraudulently inducing Pirtek to disclose its confidential information that the Twillmans then used to open their own business. Also, *Advisor's Capital* does not support dismissal; the court provided the plaintiff in that case the opportunity to amend. *Id.* at *1.

## CONCLUSION

Because the Franchise Agreement was not rescinded and Pirtek's Amended Complaint states a valid and enforceable claim for fraudulent inducement, the Twillmans' Motion to Dismiss should be denied.

Date: August 29, 2016

    **BAKER, DONELSON, BEARMAN,**
    **CALDWELL & BERKOWITZ, PC**
    SunTrust Center
    200 South Orange Ave., Ste. 2900
    P.O. Box 1549 (32802)
    Orlando, FL 32801
    Tel: (407) 422-6600
    Fax: (407) 841-0325

    By /s/James M. Talley
        JAMES M. TALLEY
        Florida Bar No.: 331961
        jtalley@bakerdonelson.com
        fedcts@bakerdonelson.com
        KYLE A. DIAMANTAS
        Florida Bar No.: 106916
        kdiamantas@bakerdonelson.com

    FAEGRE BAKER DANIELS
    William L. Killion, MN # 55700
    Nathan A. Brennaman, MN # 0331776
    2200 Wells Fargo Center,

90 South Seventh Street
Minneapolis, MN 55402-3901
(612) 766-7000

Attorney for Pirtek USA, LLC

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 29, 2016, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all parties of record.

Glenn Davis
HeplerBroom LLC
211 N. Broadway, Suite 2700
St. Louis, MO 63102
314/241-6160
Fax: 314/241-6116
Email: ged@heplerbroom.com

Usher L. Brown
Greenspoon Marder, PA
201 E Pine St Ste 500
Orlando, FL 32801-2718
407/425-6556
Fax: 407/425-6583
Email: larry.brown@gmlaw.com

/s/ *James M. Talley*
James M. Talley